UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aquapoly Equipment Co.,
a Minnesota corporation,

Civ. File No. 00-254 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

AEC, Inc., a Delaware corporation, and
Carl R. Gillig, individually and d/b/a
CRG Systems,

Defendants.

---

This matter is before the Court upon cross motions: a Motion for Preliminary Injunction by Plaintiff Aquapoly Equipment Co.; and a Motion to Dismiss and for Summary Judgment by Defendant AEC, Inc. For the reasons stated below, both motions are denied.

## BACKGROUND

Plaintiff Aquapoly Equipment Co. ("Aquapoly") is a sales agent for the products of Defendant AEC, Inc. ("AEC"), in a territory including Minnesota, North Dakota, South Dakota, and part of Wisconsin. In a January 17, 1978, "Agent Agreement," Robert Kuhn ("Kuhn") of Aquapoly and C.E. Waters ("Waters") of AEC, who are both now deceased, agreed that Aquapoly would have a "territory right" to sell AEC's products to customers



FILED JUN 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD____________
DEPUTY CLERK____________

in the Plastics and Rubber converting fields. (See Compl. Ex. 1.)[1]

Under the 1978 Agreement, Aquapoly was to pay $120,000 in installments over a period of 10 years. (See Letter Agreement ¶ 3.) Of this amount, $117,952 was allocated to goodwill associated with the sales territory, and $2,048 was allocated for physical assets.[2] It is unclear whether this distribution agreement was intended to be perpetual or limited to 10 years. (See id. ¶ 10.) However, a subsequent April 18, 1978 letter from AEC's Waters indicates that, at the very least, the 1978 Agreement was not terminable upon 30 days notice during the time period when it was in effect. (See Compl. Ex. 2.) This letter also sheds further light on the parties' intent regarding the Letter Agreement, because it responded to Kuhn's inquiry as to exactly what he was purchasing. By way of clarification, Waters stated, "[y]ou are purchasing your territory and the goodwill that AEC has in that territory." (Id.)

On January 25, 1983, the parties entered into another agreement (the "1983

---

[1] Exhibit 1 of Aquapoly's Verified Complaint includes an April 14, 1978 "Letter Agreement," the January 17, 1978 "Agent Agreement," a February 1, 1978 personal "Guaranty" of Kuhn, a February 1, 1978 "Installment Promissory Note," and a February 1, 1978 "Bill of Sale and Assignment." The April 14, 1978 Letter Agreement expressly refers to the January 17, 1978 Agent Agreement, the Guaranty, the Installment Promissory Note, and the Bill of Sale. (See Letter Agreement at 2 and 6.) These 1978 documents are collectively referred to as the "1978 Agreement."

[2] The parties disagree as to whether this "goodwill" referred to AEC's existing customer base in the territory, or instead to Aquapoly's exclusive right to sell AEC's products in the territory. The Court need not address this particular issue, however, in deciding the present motions.

Agreement") for the same territory. (See Compl. Ex. 3.) Under this 1983 Agreement, Aquapoly received exclusive rights to sell AEC's products in the Plastics Converting field, exclusive of certain explicitly listed products. (See id. ¶¶ 4, 24.) The 1983 Agreement prohibited Aquapoly from selling in the "Rubber, Plating and Heat Processing of metals, and Graphic Arts fields." (See id. ¶ 4.) However, Aquapoly retained a nonexclusive right to sell to other industries. (See id.) The 1983 Agreement was terminable by either party upon 30 days notice, and included an integration clause canceling and superseding "any and all previous contracts, agreements or other commitments previously in effect." (See id. ¶¶ 21, 23.)

On June 1, 1986, the parties entered into yet another agreement (the "1986 Agreement") for the same territory. (See Answer Ex. 1.) Under this 1986 Agreement, Aquapoly received exclusive rights to sell AEC products (excluding Decimators, and including only nonexclusive rights to "Powdrpump" conveyors, Polymer towers, and MOLDCOOL® software) in the Plastics Converting field. (See id. ¶ 1.01.) In addition, Aquapoly was prohibited from selling in the Rubber, Laser, and Graphics Arts and Metals industries, and from selling the Powdrpump in the chemical and food processing industries. (See id.) Once again, Aquapoly retained a nonexclusive right to sell to other industries. (See id.) The 1986 Agreement was also terminable upon 30 days notice, (see id. ¶ 7.01), and included an integration clause stating, among other things, "[t]his Agreement constitutes the entire agreement between the parties hereto and supersedes all

previous agreements, negotiations and commitments in respect thereto. . ." (See id. ¶ 10.03.) Importantly, the 1986 Agreement included a choice of law provision indicating that it is governed by Illinois law. (See id. ¶ 10.09.)

On at least two occasions, AEC allegedly attempted to allow other parties to sell its products within Aquapoly's territory. In 1988, AEC proposed that two former Aquapoly employees be allowed to sell products in the territory in exchange for AEC not terminating its arrangement with Aquapoly. (See January 24, 2000 Affidavit of Dan Williams ("First Williams Aff.") ¶ 4 and Ex. 4.) In response, Aquapoly contended that it had, pursuant to the 1978 Agreement, purchased outright the right to sell AEC products in its territory. AEC withdrew its proposal. (See id.) Then, in 1997, AEC allowed Defendant Carl R. Gillig ("CRG") to sell in Aquapoly's Wisconsin territory. Aquapoly again objected. (See id.) The parties reached a compromise ("the 1997 Agreement") in which CRG was allowed to sell in Aquapoly's Wisconsin territory as a subagent of Aquapoly. (See id. ¶ 7.) Under this 1997 Agreement, AEC would pay split the commissions, between CRG and Aquapoly, on CRG's sales in Aquapoly's Wisconsin territory. The compromise disintegrated, however, and Aquapoly canceled its subagency with CRG. (See id. ¶¶ 7-10.)

In October 1999, AEC gave Aquapoly 60 days notice of its intent to terminate the existing arrangement between the parties. (See id. ¶ 10 and Ex. 5.) AEC proposed a new contract that would redefine the territory to include all of Wisconsin, Minnesota, North

Dakota, and South Dakota. (See id., Ex. 6.) In addition, Aquapoly would receive exclusive rights to sell in the Injection Molding and Blow Molding industries within that territory; would be prohibited from selling in the Laser, Graphic Arts, Paper Security, and Metals industries; and would retain a nonexclusive right to sell in all other industries, including the Extrusion industry. Aquapoly rejected this proposal and filed the instant lawsuit.

Aquapoly's claims against AEC include: (1) breach of contract regarding its purported exclusive distributorship rights under the 1978 and 1983 Agreements; (2) breach of contract for nonpayment of sales commissions under the 1997 Agreement; and (3) improper termination of the relationship between Aquapoly and AEC in violation of the Minnesota Franchise Act. Aquapoly also claims that Defendant CRG tortiously interfered with Aquapoly's contract with AEC under the 1978 and 1983 Agreements. In turn, AEC has counterclaimed for a declaration that its relationship with Aquapoly is governed by the 1986 Agreement, which it contends superseded the 1978 and 1983 Agreements.

In the cross motions presently before the Court, Aquapoly seeks a preliminary injunction against AEC and CRG to allow it to obtain continued exclusivity in selling AEC products in the territory. AEC seeks judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or, alternatively, summary judgment under Rule 56.

## DISCUSSION

### A. Standard

For a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party. National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir. 1993). Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. See id. If resolution of the disputed issues depends on matters outside the pleadings, the Court may treat the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is to be decided using an identical standard. See Fed. R. Civ. P. 12(c); 5A Charles A. Wright & Arthur R. Miller § 1369 (1990 & 1998 Supp.).

### B. Merits

1. Defendant AEC's Motion Under Rule 12(c) or Rule 56

At the heart of the present dispute are the parties' very different views regarding the effect of the 1986 Agreement. AEC argues that the 1986 Agreement, which included an integration clause, superseded the earlier 1978 and 1983 Agreements on which Aquapoly's claims are based. Aquapoly contends that the 1983 and 1986 Agreements supplemented, but did not supersede, the 1978 Letter Agreement. In support of this

argument, Aquapoly points to an affidavit by Aquapoly's President, Dan Williams, which states that Kuhn told him that AEC continued to accept annual installment payments of $17,833.54 on the 1978 Promissory Note after entering into each of the 1983 and 1986 Agreements. (See May 5, 2000 Affidavit of Dan Williams ("Second Williams Aff.") ¶ 3.) Aquapoly argues that this evidence refutes AEC's argument that the 1986 Agreement extinguished all prior agreements between the parties. AEC counters that the parol evidence rule bars the Court from considering this extrinsic evidence to vary the terms of the fully integrated and unambiguous 1986 Agreement. In determining whether to admit this extrinsic evidence, however, the Court notes two well-recognized limitations on the parol evidence rule. First, the rule only bars prior or contemporaneous oral agreements and prior written agreements; it does not bar evidence arising after the execution of the written agreement, such as AEC's continued acceptance of payments after 1986. See Nord v. Herreid, 305 N.W.2d 337, 339-40 (Minn. 1981); Fredrich v. Independent School Dist. No. 720, 465 N.W.2d 692, 695 (Minn. Ct. App. 1991).

Second, even if the proffered extrinsic evidence could somehow be characterized as parol evidence, the Court may receive parol evidence for the particular purpose of determining whether an agreement is indeed fully integrated. See Stromberg v. Smith, 423 N.W.2d 107, 109 (Minn. Ct. App. 1988). This appears to be consistent with Aquapoly's purpose for introducing the evidence of AEC's continued acceptance of payments. AEC argues that the contract language must be deemed ambiguous before the

Court can consider any parol or other extrinsic evidence, and that the integration clause in the 1986 Agreement is plainly unambiguous. This argument is without merit. "A court need not make a preliminary determination that the [contract] language is ambiguous to permit parol evidence for the purpose of interpreting an integration." Anderson v. Kammeier, 262 N.W.2d 366, 370 n.2 (Minn. 1977). Thus, the Court cannot conclude that the proposed extrinsic evidence is per se inadmissible, even if it could somehow be characterized as parol evidence.

In summary, the evidence of continued payments creates a genuine issue of material fact as to whether the 1986 Agreement was intended to be a full integration of the parties' rights and relationship that superseded the prior 1978 and 1983 Agreements. Consequently, a genuine issue of material fact also exists as to whether CRG tortiously interfered with Aquapoly's rights under the earlier 1978 and 1983 Agreements. (See Compl. ¶¶ 35-39.) Furthermore, there also exists a genuine issue of material fact as to whether the continued payments constituted a franchise fee supporting Aquapoly's claim under the Minnesota Franchise Act. Lastly, because neither party has adequately addressed Aquapoly's claim for breach of contract for AEC's alleged nonpayment of Aquapoly's share of CRG's commissions under the 1997 Agreement, the Court cannot decide the viability of that claim at this time.

2. Aquapoly's Motion For Preliminary Injunction

Aquapoly seeks a preliminary injunction prohibiting AEC from allowing others, including CRG, from selling AEC products in the territory. Determining whether a preliminary injunction should issue "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). Aquapoly argues that, without such injunctive relief, it will lose income and will therefore be required to begin terminating employees. (See First Williams Aff. ¶ 11.) This argument is based on Aquapoly losing its right to market AEC products entirely. During the present litigation, however, AEC has permitted Aquapoly to continue marketing its products nonexclusively–that is, together with CRG. (See Chudyk Decl. ¶ 10.) Furthermore, Aquapoly has continued to derive considerable income from doing so. (See Second Chudyk Decl. Ex. A.) Thus, the Court is unable to conclude that denying injunctive relief would actually result in the claimed harm to Aquapoly. Moreover, any resulting harm to Aquapoly is not likely to be irreparable; money damages would provide sufficient remediation. See Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 300 (8th Cir. 1996) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"). Granting Aquapoly's requested injunctive relief, however, would exclude CRG entirely from

selling AEC products in the territory. This would necessarily result in a greater harm to CRG than any harm being incurred by Aquapoly under the present nonexclusive arrangement. Accordingly, the Court denies Aquapoly's motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court concludes that a genuine issue of material fact exists as to whether: (1) the 1986 Agreement was intended to be a full integration of the parties' rights and relationship that superseded the prior 1978 and 1983 Agreements; (2) CRG tortiously interfered with the business relationship between Aquapoly and AEC; and (3) AEC's actions violated the Minnesota Franchise Act. Moreover, the Court finds that denying a preliminary injunction is not likely to result in irreparable harm to Aquapoly, and that any resulting harm is likely outweighed by the harm to CRG.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant AEC, Inc.'s Motion to Dismiss and For Summary Judgment (Clerk Doc. No. 13) is **DENIED**; and

2. Plaintiff Aquapoly Equipment Company's Motion for Preliminary Injunction (Clerk Doc. No. 11) is **DENIED**.

Dated: June 14, 2000

Paul A. Magnuson
United States District Court Judge